1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   RHODA Y. SOLOMON,                  NO. CIV. 2:12-209 WBS KJN

13            Plaintiff,
                                        MEMORANDUM AND ORDER RE:
14       v.                             MOTION TO DISMISS

15   AURORA LOAN SERVICES LLC, a
     California limited liability
16   company; and DOES 1 through
     50, inclusive,
17
              Defendant.
18   _____/

19

20                         ----oo0oo----

21            Plaintiff Rhoda Y. Solomon brings this action against

22   defendant Aurora Loan Services LLC ("Aurora"), arising from

23   defendant's allegedly wrongful conduct related to a residential

24   loan.  Aurora now moves to dismiss the First Amended Complaint

25   ("FAC") for failure to state a claim upon which relief can be

26   granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

27   (Def.'s Mot. to Dismiss (Docket No. 16).)

28   \\\

                                1

I.   <u>Factual and Procedural Background</u>

In December of 2007, plaintiff obtained a loan from American Broker's Conduit ("ABC"), secured by her residence at 1558 Tamarisk Lane in Tracy, California ("Tamarisk Lane property"). (FAC ¶¶ 1, 6.) Defendant was the servicer of ABC's loan. (FAC ¶ 9.) According to plaintiff, on or about January 2010, she was experiencing economic hardship and, for the first time, missed a payment due on this loan. (<u>Id.</u> ¶ 7.)

Later that month, plaintiff alleges that she applied for a Home Affordable Modification Program ("HAMP") loan modification with defendant, (<u>id.</u> ¶ 8), and engaged Financial Hope for America ("FHFA") to assist her in the application process, (<u>id.</u> ¶ 10, Ex. C). Over the next several months, plaintiff further alleges that defendant repeatedly told her that her application was incomplete and requested that she submit additional documents in connection with her application. (<u>Id.</u> ¶¶ 9, 11-14, Exs. E-G.) Plaintiff alleges that despite the fact that she had already submitted these documents, she submitted additional copies of the requested documents. (<u>Id.</u>)

According to plaintiff, in August 2010, defendant informed her in a letter that her request for a HAMP modification was denied because she had not provided the required documents within the specified time frame. (<u>Id.</u> ¶ 15, Ex. H.) Approximately one week later, defendant allegedly sent plaintiff another letter informing her that she may be eligible for a HAMP modification. (<u>Id.</u> ¶ 16, Ex. I.) Plaintiff alleges that she then reapplied for a HAMP modification. (<u>Id.</u> ¶ 17.)

Defendant again notified plaintiff that her application

2

1   for a HAMP modification had been denied, this time for excessive
2   forbearance.  (Id. ¶ 19.)  The letter explained that defendant
3   was "unable to create an affordable payment equal to 31% of your
4   reported monthly gross income without changing the terms of your
5   loan beyond the requirements of the program."  (Id. ¶ 19, Ex. K.)
6   According to plaintiff, this statement was false.  (Id. ¶ 20.)

7        A month later, plaintiff alleges that she received a
8   second letter rejecting her August 2010 application for a HAMP
9   modification, this time on the ground that her monthly debt to
10  income ratio was too high.  (Id. ¶ 21, Ex. M.)  She further
11  alleges that this is not a valid reason to deny a HAMP
12  application.  (Id. ¶ 22.)

13       According to plaintiff, she submitted a third
14  application for a HAMP modification in December 2010.  (Id. ¶
15  23.)  In January 2011, plaintiff alleges that she received a
16  letter from defendant indicating that several documents were
17  missing from her application package when those documents in fact
18  had already been submitted in a timely manner.  (Id. ¶ 24, Ex.
19  N.)

20       On February 22, 2011, ABC assigned the Deed of Trust on
21  plaintiff's property to defendant.  (Id. ¶ 25, Ex. O.)  On March
22  2, 2011, defendant filed a Substitution of Trustee naming Quality
23  Loan Service Corporation ("Quality") as trustee under the Deed of
24  Trust.  (Id. ¶ 26, Ex. P.)  Several days later, Quality recorded
25  a Notice of Default listing a past-due balance of $20,802.84.
26  (Id. ¶ 27, Ex. Q.)  On June 10, 2011, Quality recorded a Notice
27  of Trustee's Sale, which indicated that a sale would be held on
28  July 5, 2011, and that the total outstanding balance on the loan

3

1  was $567,089.94.  (<u>Id.</u> ¶ 28, Ex. R.)

2         Plaintiff alleges that she contacted defendant on June
3  15, 2011, and spoke with Rebecca.  (<u>Id.</u> ¶ 29.)  She further
4  alleges that when she explained that she had been wrongfully
5  denied for a HAMP modification twice in the past, Rebecca
6  informed her that she could either pay defendant the entirety of
7  her arrearage on the loan or obtain a loan workout under HAMP.
8  (<u>Id.</u>)

9         Plaintiff claims that after discussing these options
10 with her mother and brother, who were living with her at the
11 time, she called defendant back the next day and spoke with
12 Maytal.  (<u>Id.</u> ¶ 30.)  According to plaintiff, when she explained
13 to Maytal that she wanted to reinstate her loan so as to avoid
14 foreclosure and that she was hoping defendant would reduce the
15 principal balance on her home, Maytal told her that she could
16 reinstate her loan by paying the amount past due, but that the
17 only way to reduce the principal would be to obtain a loan
18 workout.  (<u>Id.</u>)  According to plaintiff, she had sufficient funds
19 available and offered to pay the amount past due.  Maytal then
20 told her to wait until defendant informed her of the results of
21 her HAMP application.  (<u>Id.</u>)  Maytal allegedly informed plaintiff
22 that defendant filed the Notice of Sale "as a matter of course,
23 but that [defendant] could not foreclose on her property until
24 and unless they reject her application."  (<u>Id.</u>)

25        Approximately two weeks later, on June 29, 2011,
26 plaintiff claims that she sent defendant a letter in which she
27 explained that she was experiencing financial hardship due, in
28 part, to the loss of her job and disability and requested a loan

4

1  modification.  (<u>Id.</u> ¶ 31, Ex. S.)  She also submitted a fourth
2  HAMP modification application.  (<u>Id.</u>)

3        On August 11, 2011, defendant foreclosed on the
4  Tamarisk Lane property, which was sold to defendant for $215,100.
5  (<u>Id.</u> ¶ 32, Ex. T.)  On or about October 3, 2011, defendant filed
6  an unlawful detainer action against plaintiff.  (<u>Id.</u> ¶ 33, Ex.
7  U.)

8        On January 11, 2012, plaintiff filed suit in state
9  court.  (Notice of Removal ("Compl.") Ex. 1 (Docket No. 1).)
10 Defendant removed the proceeding to this court two weeks later.
11 (Docket No. 1.)  In her first complaint, plaintiff alleged nine
12 claims.  (<u>Id.</u>)  Defendant moved to dismiss plaintiff's complaint
13 in its entirety for failure to state a claim.  (Docket No. 7).
14 Plaintiff filed her non-opposition and this court granted
15 defendant's motion to dismiss with leave to amend within twenty
16 days.

17       Plaintiff filed her FAC alleging claims against
18 defendant for: (1) negligence, (2) promissory estoppel, (3)
19 violation of California's Unfair Competition Law, Bus. & Prof.
20 Code § 17200 et seq., (4) preliminary and permanent injunction,
21 (5) declaratory relief, (6) set aside of the trustee's deed upon
22 sale, (7) cancellation of the trustee's deed upon sale, and (8)
23 quiet title.  Defendant now moves to dismiss plaintiff's FAC in
24 its entirety for failure to state a claim.

25 II.  <u>Request for Judicial Notice</u>

26       In general, a court may not consider items outside the
27 pleadings upon deciding a motion to dismiss, but may consider
28 items of which it can take judicial notice.  <u>Barron v. Reich</u>, 13

F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial
notice of facts not subject to reasonable dispute because they
are either (1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned. Fed. R. Evid. 201.  The court may take
judicial notice of matters of public record or of documents whose
contents are alleged in the complaint and whose authenticity is
not questioned.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89
(9th Cir. 2001).

        Defendant has filed a request for judicial notice of
plaintiff's bankruptcy application and order dismissing her
application, along with a publicly filed Consent Order that
plaintiff relies on in her FAC.  (Docket No. 16-1.)  The court
will take judicial notice of the two bankruptcy documents as they
are matters of public record whose accuracy cannot be questioned.
See Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092,
1097 (E.D. Cal. 2010) (taking judicial notice of documents from
plaintiff's bankruptcy proceedings).  The court will also take
judicial notice of the Consent Order as it was referenced in the
FAC and its authenticity has not been questioned.  See No. 84
Employer-Teamster Joint Council Pension Trust Fund v. Am. W.
Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

III. Discussion

        On a motion to dismiss, the court must accept the
allegations in the complaint as true and draw all reasonable
inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
U.S. 232, 236 (1974), overruled on other grounds by Davis v.

6

1  <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

2  (1972).  "To survive a motion to dismiss, a complaint must

3  contain sufficient factual matter, accepted as true, to 'state a

4  claim to relief that is plausible on its face.'"  <u>Ashcroft v.</u>

5  <u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

6  <u>Twombly</u>, 550 U.S. 544, 570 (2007)).

7         This "plausibility standard," however, "asks for more

8  than a sheer possibility that a defendant has acted unlawfully,"

9  and "[w]here a complaint pleads facts that are 'merely consistent

10  with' a defendant's liability, it 'stops short of the line

11  between possibility and plausibility of entitlement to relief.'"

12  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556-57).

13         A.   <u>Negligence</u>

14         Plaintiff asserts that defendant negligently handled

15  and reviewed her HAMP application.  To state a claim for

16  negligence, a plaintiff must show: "(1) a legal duty to use

17  reasonable care, (2) breach of that duty, and (3) proximate cause

18  between the breach and (4) the plaintiff's injury."  <u>Mendoza v.</u>

19  <u>City of Los Angeles</u>, 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998)

20  (citation omitted).  "[A]bsent a duty, the defendant's care, or

21  lack of care, is irrelevant" and plaintiff's negligence claim

22  fails.  <u>Dooms v. Fed. Home Loan Mortg. Corp.</u>, No. 11-0352, 2011

23  WL 1232989, at *11 (E.D. Cal. Mar. 31, 2011) (quoting <u>Software</u>

24  <u>Design & Application, Ltd. v. Hoefer & Arnett, Inc.</u>, 49 Cal. App.

25  4th 472, 481 (1st Dist. 1996)).  The existence of a legal duty to

26  use reasonable care in a particular factual situation is a

27  question of law for the court to decide.  <u>Vasquez v. Residential</u>

28  <u>Invs., Inc.</u>, 118 Cal. App. 4th 269, 278 (4th Dist. 2004).

1    Plaintiff argues that, having voluntarily undertaken to

2  review her HAMP application, defendant owed her a duty to

3  complete that task.  (Pl.'s Opp'n to Mot. to Dismiss at 10:12-26

4  (Docket No. 17).)  It is true that there is California authority

5  suggesting that "a person may become liable in tort for

6  negligently failing to perform a voluntarily assumed undertaking

7  even in the absence of a contract to do so" and, in such a case,

8  "the person undertaking to perform the serve is under a duty to

9  exercise due care in performing the voluntarily assumed duty."

10 Valdez v. Taylor Auto Co., 129 Cal. App. 2d 810, 817 (1954).  In

11 Valdez, however, the defendant promised to obtain liability and

12 property damage insurance for the plaintiff, but failed to do so.

13 Id. at 812.  In finding a duty of care, the court noted that in

14 cases involving a voluntarily assumed undertaking, "the court has

15 laid stress upon the fact that the plaintiff has relied upon the

16 conduct of the defendant to his damage, and has indicated that

17 this is essential to liability."  Id. at 817-18 (quoting Prosser

18 on Torts § 32).  Similarly, in Aim Insurance Co. v. Culcasi, 229

19 Cal. App. 3d 209 (6th Dist. 1991), the plaintiff alleged that she

20 entrusted an application for health insurance and supporting

21 documents to the defendant, who told her she would be properly

22 enrolled in the plan.  Id. at 216.  The defendant then failed to

23 complete the enrollment.  Id.  Because the plaintiff had reason

24 to rely on the defendant's representations, the court found that

25 a duty of care existed.  Id.

26    Here, defendant only represented that plaintiff might

27 be eligible for a home loan modification.  Plaintiff was never

28 promised a modification and so plaintiff could not reasonably

1 rely on defendant's offer to review her HAMP loan modification

2 application.  This case is therefore distinguishable from <u>Valdez</u>

3 and <u>Aim Insurance</u> and plaintiff may not rely on them to show a

4 duty of care in this case.

5       As a general rule, "a financial institution owes no

6 duty of care to a borrower when the institution's involvement in

7 the loan transaction does not exceed the scope of its

8 conventional role as a mere lender of money." <u>Nymark v. Heart</u>

9 <u>Fed. Savs. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 1096 (3d Dist.

10 1991).  Liability to a borrower for negligence arises only when

11 the lender "actively participates" in the financed enterprise

12 "beyond the domain of the usual money lender." <u>Wagner v. Benson</u>,

13 101 Cal. App. 3d 27, 35 (4th Dist. 1980); <u>see also</u> <u>Oaks Mgmt.</u>

14 <u>Corp. v. Superior Court</u>, 145 Cal. App. 4th 453, 466 (4th Dist.

15 2006) (holding that absent "special circumstances" a loan

16 transaction "is at arms-length and there is no fiduciary

17 relationship between the borrower and lender").[1]

18

---

19     [1]   Plaintiff also appears to allege that a duty of care
20 arose from a Consent Order entered into by defendant and the
Office of Thrift Supervision.  (FAC ¶ 44.)  That document dealt
21 with deficiencies identified by the Office of Thrift Supervision
in defendant's handling of residential home loans.  The Consent
22 Order provides:

23     Nothing in this Stipulation or the Order, express or implied
shall give to any person or entity, other than the parties
hereto, and their successors hereunder, any benefit or any
24 legal or equitable right, remedy or claim under this
Stipulation or the Order.

25

26 (Req. for Judicial Notice Ex. 3 at 29.)  Plaintiff was not a
party to the Consent Order; it mentions nothing about plaintiff
27 or a duty of care owed to plaintiff or similarly situated
individuals.  Plaintiff cites to no authority to explain how the
28 Consent Order imposes a duty of care towards her on the
defendant.

1    According to plaintiff's allegations, it does not

2    appear that defendant acted beyond the domain of the usual money

3    lender.  Most courts that have considered the issue have held

4    that a duty does not arise when a lender reviews a debtor's

5    application for a loan.  <u>See Dooms</u>, 2011 WL 1232989, at *12;

6    <u>Becker v. Wells Fargo Bank, N.A., Inc.</u>, No. 2:10-cv-02799, 2011

7    WL 1103439, at *23 (E.D. Cal. Mar. 22, 2011) (magistrate judge's

8    findings and recommendations) (holding that allegations about

9    loan modification application process did not give rise to a

10   duty); <u>DeLeon v. Wells Fargo Bank, N.A.</u>, No. 10-CV-01390, 2010 WL

11   4285006, at *4 (N.D. Cal. Oct. 22, 2010) (finding that defendant

12   did not have a duty "to complete the loan modification process");

13   <u>Sullivan v. JP Morgan Chase Bank, NA</u>, 725 F. Supp. 2d 1087, 1094

14   (E.D. Cal. 2010) (holding that "[p]laintiffs' allegations that

15   Defendant misrepresented to them that a permanent loan

16   modification would be put into place are insufficient to form the

17   basis of a negligence claim").  <u>But see Ansanelli v. JP Morgan</u>

18   <u>Chase Bank, N.A.</u>, No.  10-03892, 2011 WL 1134451, at *7 (N.D.

19   Cal. Mar. 28, 2011) (holding that duty existed after plaintiff

20   and defendant entered into trial period plan); <u>Garcia v. Ocwen</u>

21   <u>Loan Servicing, LLC</u>, No. 10-0290, 2010 WL 1881098, at *3 (N.D.

22   Cal. May 10, 2010) (magistrate judge's order) (holding that

23   plaintiff's allegations about loan modification application

24   process were sufficiently pled).

25   Moreover, to the extent that plaintiff bases her

26   negligence claim on an alleged entitlement to a modification

27   under HAMP, her claim is an improper attempt to privately enforce

28   HAMP when Congress granted no such private right of action.  <u>See</u>

1  <u>Ingalsbe v. Bank of Am., N.A.</u>, No. 1:10-CV-01665-OWW, 2010 WL

2  5279839, at *5 (E.D. Cal. Dec. 13, 2010) ("The consensus among

3  district courts in the Ninth Circuit is that there is no private

4  right of action under HAMP").  This leaves plaintiff's allegation

5  that defendant's negligence in processing her modification

6  application caused her to lose her home.  Plaintiff admits,

7  though, that she was in default on her loan.  Defendant never

8  promised plaintiff a modification, it only represented that she

9  might be eligible for one.  At any point during plaintiff's

10 default, defendant had the right to foreclose on the property.

11 It was that default that caused the foreclosure that caused her

12 injury, not defendant's denial of a home loan modification.  <u>See</u>

13 <u>DeLeon v. Wells Fargo Bank, N.A.</u>, No. 10-CV-01390, 2011 WL

14 311376, at *7 (N.D. Cal. Jan. 28, 2011) (finding that defaulted

15 homeowners had their home foreclosed on because they fell behind

16 on payments, not because they were denied a loan modification).

17      Accordingly, plaintiff has not stated a claim for

18 negligence and defendant's motion to dismiss with respect to the

19 negligence claim will be granted.

20      B.   <u>Promissory Estoppel</u>

21      A plaintiff alleging a promissory estoppel claim must

22 show: (1) the existence of a promise "clear and unambiguous in

23 its terms"; (2) "reliance by the party to whom the promise is

24 made"; (3) that any reliance was both "reasonable and

25 foreseeable"; and (4) that the party asserting the estoppel was

26 injured by his reliance.  <u>US Ecology, Inc. v. State</u>, 129 Cal.

27 App. 4th 887, 901 (4th Dist. 2005) (quoting <u>Laks v. Coast Fed.</u>

28 <u>Sav. & Loan Ass'n</u>, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).

1    In <u>Garcia v. World Savings FSB</u>, 183 Cal. App. 4th 1031,
2  1041 (2d Dist. 2010), a homeowner couple fell behind on their
3  mortgage payments, but were told they could pay the arrearage and
4  reinstate their loan.  <u>Id.</u> at 1035.  The homeowners requested an
5  extension and the defendant promised to postpone foreclosure
6  until after the extension period.  <u>Id.</u>  During the extension
7  period, the homeowners procured a high-cost, high-interest loan
8  using other property they owned as security.  <u>Id.</u> at 1041.
9  Before the homeowners were able to reinstate their loan and
10 before the extension period ended, however, the defendant
11 foreclosed on the property.  <u>Id.</u> at 1036.  The court found that
12 the homeowners had detrimentally and reasonably relied on the
13 defendant's clear promise and therefore had successfully stated a
14 claim for promissory estoppel.  <u>Id.</u> at 1041.

15    Here, defendant allegedly promised that they would not
16 foreclose on plaintiff's property while her HAMP application was
17 pending.  Plaintiff allegedly could have paid back the arrearage
18 to reinstate her loan, but followed defendant's advice to delay
19 payment until after the results of her most recent HAMP
20 application were in.  This step was taken in reasonable reliance
21 on defendant's promise, and was foreseeable as it was precisely
22 what defendant's agent advised her to do.  Plaintiff suffered
23 injury as a result of her reliance because her home was
24 foreclosed on before her HAMP application was resolved.  She has
25 therefore sufficiently alleged the elements of a promissory
26 estoppel claim.

27    Defendant argues that an oral promise to delay
28 foreclosure violates the statute of frauds and is therefore

12

unenforceable.  However, "[a] party is estopped to assert the statute of frauds as a defense where the party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment."  <u>Garcia</u>, 183 Cal. App. 4th at 1041.  Accordingly, the statute of frauds is not a bar to plaintiff's promissory estoppel claim.

Defendant further suggests that plaintiff cannot assert a promissory estoppel claim because a claim for promissory estoppel requires extra contractual statements.  It argues there was an express contract between the parties and "[i]f the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, [promissory estoppel] is inapplicable."  <u>Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr., Inc.</u>, 471 F. Supp. 2d 1035, 1043 (N.D. Cal. 2007).  This argument is unavailing because <u>Philips</u>, the only case defendant cites, goes on to qualify that "it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel."  <u>Id.</u> (quoting <u>Healy v. Brewster</u>, 59 Cal. 2d 455, 463 (1963)).  Here, the promise that plaintiff relied on was the promise not to foreclose while her application was pending, a promise extraneous to the note and deed of trust.  Therefore, an express contract does not bar plaintiff's promissory estoppel claim.[2]

---

[2]    Defendant also argues that plaintiff cannot assert a promissory estoppel claim because she has no private right of action under HAMP.  (Docket No. 16.)  The court agrees that plaintiff has no private right of action under HAMP.  Plaintiff's promissory estoppel claim, however, is not an attempt to privately enforce HAMP.

1    Accordingly, plaintiff has stated a claim for
2  promissory estoppel and the court will deny defendant's motion to
3  dismiss the claim.

4         C.   Unfair Business Practices

5         California's UCL prohibits "any unlawful, unfair or
6  fraudulent business act or practice . . . " Cal. Bus. & Prof.
7  Code § 17200.  This cause of action is generally derivative of
8  some other illegal conduct or fraud committed by a defendant.
9  Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (2d
10 Dist. 1993).  Plaintiff alleges defendant violated the UCL by
11 failing to conduct a good faith review of, and using disingenuous
12 pretexts to deny, her HAMP application and foreclosing while her
13 third application was still pending.

14        Standing to bring a UCL claim requires "a person who
15 has suffered injury in fact and has lost money or property as a
16 result of the unfair competition."  Cal. Bus. & Prof. Code §
17 17204 (emphasis added).  To have standing under the UCL, a
18 plaintiff must sufficiently allege that (1) [s]he has "lost
19 'money or property' sufficient to constitute an 'injury in fact'
20 under Article III of the Constitution," Rubio v. Capital One
21 Bank, 613 F.3d 1195, 1203-04 (9th Cir. 2010), and (2) there is a
22 "causal connection" between the defendant's alleged UCL violation
23 and the plaintiff's injury in fact.  Id. (quoting Hall v. Time
24 Inc., 158 Cal. App. 4th 847, 855 (4th Dist. 2008)).

25        Plaintiff demonstrates that she has suffered an injury
26 in losing her home, but fails to demonstrate a "causal
27 connection" between defendant's alleged wrongful conduct and her
28 losing her home.  As discussed above in the court's discussion of

14

1  plaintiff's failed negligence claim, defendant's alleged

2  statements that plaintiff "might" be eligible for a loan

3  modification and subsequent denial of her application are not

4  causally related to plaintiff's loss of property.  Plaintiff had

5  no right to a loan modification, <u>Mabry v. Superior Court</u>, 185

6  Cal. App. 4th 208, 214 (4th Dist. 2010), and had already

7  defaulted on her mortgage.[3]  Accordingly, the plaintiff does not

8  have standing on her UCL claim and the court will grant

9  defendant's motion to dismiss this claim.

10  D.   <u>Set Aside and Cancel Trustee's Sale</u>

11       The elements of an equitable cause of action to set

12  aside a foreclosure sale are: (1) the trustee or mortgagee caused

13  an illegal, fraudulent, or willfully oppressive sale of real

14  property pursuant to a power of sale in a mortgage or deed of

15  trust; (2) the party attacking the sale was prejudiced or harmed;

16  and (3) the mortgagor tendered the amount of the secured

17  indebtedness or was excused from tendering.  <u>Lona v. Citibank,</u>

18  <u>N.A.</u>, 202 Cal. App. 4th 89, 104 (6th Dist. 2011).  "It is the

19  general rule that courts have power to vacate a foreclosure sale

20  where the sale has been improperly, unfairly, or unlawfully

21  conducted, or where there has been such a mistake that to allow

22  it to stand would be inequitable to purchaser and parties."

23  <u>Lona</u>, 202 Cal. App. 4th at 104.

24

25       [3]   Plaintiff does not mention defendant's alleged breach
    of its promise to delay foreclosure in the UCL section of her
26  FAC.  The section does contain one sentence incorporating the
    rest of the FAC, but such a conclusory statement is insufficient
27  to put defendant on notice that plaintiff bases her UCL claim on
    that part of defendant's conduct.  The court therefore does not
28  consider whether the conduct alleged in plaintiff's promissory
    estoppel claim could form the basis for a valid UCL claim.

1    "A properly conducted non-judicial foreclosure sale
2 constitutes a final adjudication of the rights of the borrower
3 and lender," <u>Moeller v. Lien</u>, 25 Cal. App. 4th 822, 831 (2d Dist.
4 1994), and is "accompanied by a common law presumption that it
5 'was conducted regularly and fairly,'" <u>Melendrez v. D & I Inv.,</u>
6 <u>Inc.</u>, 127 Cal. App. 4th 1238, 1258 (6th Dist. 2005) (quoting
7 <u>Brown v. Busch</u>, 152 Cal. App. 2d 200, 204 (3d Dist. 1957)).  The
8 party challenging the trustee's sale bears the burden of
9 overcoming the presumptive regularity of the sale.  <u>Id.</u>  This
10 presumption is conclusive if the buyer is a bona fide purchaser
11 ("BFP").  <u>6 Angels, Inc. v. Stuart-Wright Mortg., Inc.</u>, 85 Cal.
12 App. 4th 1279, 1286 (2d Dist. 2001) ("[T]he sale can be
13 successfully attacked on the grounds of procedural irregularity
14 only if the buyer is not a bona fide purchaser.").

15    "[T]he proper standard to determine whether a buyer at
16 a foreclosure sale is a BFP is whether the buyer (1) purchased
17 the property for value, and (2) had no knowledge or notice of the
18 asserted rights of another." <u>Singh v. Wells Fargo Bank</u>, No.
19 1:10-CV-1659 AWI SMS, 2012 WL 691705, at *8 (E.D. Cal. Mar. 2,
20 2012) (quoting <u>Melendrez</u>, 127 Cal. App. 4th at 1258).  Defendant
21 did purchase the property for value, although it paid less than
22 half of what was due on the loan at the time of the sale.  (FAC ¶
23 32.)  It is not a bona fide purchaser, however, because it was
24 aware of plaintiff's claims to the property.

25    Plaintiff argues that the foreclosure was conducted
26 unlawfully because defendant breached its HAMP contract with the
27 U.S. Treasury Department and because defendant breached its oral
28 contract with plaintiff to stay foreclosure proceedings until

16

1  after review of her HAMP application.

2         As to plaintiff's first ground to set aside the

3  trustee's sale, because HAMP does not provide a private cause of

4  action, she cannot base her claim to set aside on a violation of

5  HAMP or a violation of defendant's contract with the U.S.

6  Treasury Department.  Velasquez v. Chase Home Finance LLC, No.

7  CIV S-12-0433, 2012 WL 1378492, at *4 (E.D. Cal. Apr. 19, 2012)

8  (citing Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d

9  1177, 1184-85 (N.D. Cal. 2009)); see also Astra USA, Inc. v.

10 Santa Clara County, 131 U.S. 1342, 1348 (2011) (where government

11 contract merely confirmed statutory obligations and statute did

12 not provide private right of action, county could not bring

13 breach of contract suit as intended third-party beneficiary).

14        As to plaintiff's second ground to set aside the sale,

15 while plaintiff has not stated a claim for breach of contract,

16 she has stated a claim for promissory estoppel.  California

17 courts have held that a foreclosure sale may be set aside if the

18 debtor was not in fact in default at the time that the

19 foreclosure sale occurred or if the lender excused the debtor's

20 default.  Lona, 202 Cal. App. 4th at 105 (citing cases); see also

21 Nguyen v. Calhoun, 105 Cal. App. 4th 428, 449 (6th Dist. 2003)

22 (suggesting that breach of a valid oral promise to postpone a

23 foreclosure sale might provide grounds to set aside the sale, but

24 finding that plaintiff had not alleged a valid promise).

25        As discussed above in the section discussing

26 plaintiff's claim for promissory estoppel, although plaintiff was

27 in default at the time the sale occurred, plaintiff had allegedly

28 offered to cure her default, but was told by defendant that she

1  should not do so until review of her HAMP application was

2  complete.  Defendant also allegedly promised that foreclosure

3  would not occur in the meantime and, relying on this promise,

4  plaintiff refrained from paying the amount she owed under the

5  loan agreement.  Had defendant not instructed her otherwise,

6  plaintiff alleges that would not have been in default when the

7  foreclosure sale occurred.  Although the court has not found and

8  neither party has produced a case directly on point, these facts

9  suggest that the court has the power to vacate the foreclosure

10  sale because a mistake occurred such that to allow the sale to

11  stand would be inequitable to the parties and purchaser.  <u>See</u>

12  <u>Lona</u>, 202 Cal. App. 4th at 104.

13          Having alleged that the sale was improper, two elements

14  of a claim to set aside a trustee's sale remain.  First, a

15  plaintiff must also allege that the imperfection in the sale

16  harmed or prejudiced her.  <u>Permito v. Wells Fargo Bank, N.A.</u>, No.

17  C-12-00545 YGR, 2012 WL 1380322, at *6 (N.D. Cal. Apr. 20,

18  2012).  Plaintiff here was harmed when defendant sold her house

19  despite its promise it would not do so until the review of her

20  HAMP application was complete.

21          Second, plaintiff must allege that she tendered or that

22  a tender was not required.  A full tender must be made to set

23  aside a foreclosure sale, based upon equitable principles.

24  <u>Stebley v. Litton Loan Servicing, LLP</u>, 202 Cal. App. 4th 522, 526

25  (3rd Dist. 2011).  A tender, however, may not be required where

26  it would be inequitable to impose such a condition on the party

27  challenging the sale.  <u>Lona</u>, 202 Cal. App. 4th at 113.

28          In <u>Singh</u>, the plaintiffs, who had not been in default

                                  18

at the time of the foreclosure sale of their house, sought to set

aside the sale and reinstate the modified loan agreement the

parties had entered into.  In their First Amended Complaint, they

alleged that they "'stood ready willing and able to <u>pay the</u>

<u>entire indebtedness</u> at the agreed-upon interval set forth in the

deed of trust and promissory note.'"  <u>Singh</u>, 2012 WL 691705, at

*8 (quoting plaintiffs' First Amended Complaint).

        The court held that although plaintiffs' offer was not

a valid tender because it was not an offer of full performance,

tender was not required.  <u>Id.</u>  The court reasoned that the tender

rule is premised upon the maxim that a court of equity will not

order that a useless act be performed.  <u>Id.</u> (citing <u>Arnolds Mgmt.</u>

<u>Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 579 (2d Dist. 1984)).  In

the usual foreclosure case it thus makes sense to require a

plaintiff in default to tender because without a tender, the

plaintiff will recover the property but remain in default, with

the result that a second foreclosure is likely to occur.  <u>Id.</u>

(citing <u>Karlsen v. Am. Sav. & Loan Assn.</u>, 15 Cal. App. 3d 112,

115 (2d Dist. 1971)).  The plaintiffs in <u>Singh</u>, though, were not

in default, so if the sale were set aside, the loan would be

reinstated free from any default.  The set aside would not be

useless and so the court concluded that tender was not required.

<u>Id.</u>

        Here, plaintiff alleges that she had sufficient funds

to pay all of her arrearage at the time that the foreclosure sale

occurred and further alleges that she "offers to tender to

Defendant all amounts due and owing so that the claimed default

may be cured and Plaintiff may be reinstated to all former rights

and privileges under the subject deed of trust.  Plaintiff is
ready willing and able [sic] to tender all amounts that the court
finds due and owing."  (FAC ¶ 71.)  Because plaintiff would not
have been in default but for defendant's instructions that she
delay payment until her HAMP application was resolved and she
alleges that she is willing and able to make payments sufficient
to cure any default on her loan, as in <u>Singh</u> it does not appear
that it would be useless to set aside the foreclosure sale and
reinstate plaintiff's loan.  Tender is therefore not required.

Accordingly, plaintiff has stated a valid claim to set
aside the foreclosure sale and defendant's motion to dismiss this
claim will be denied.  Plaintiff's seventh cause of action, to
cancel the trustee deed, is not an independent cause of action,
but a request for a particular remedy.  <u>Plastino v. Wells Fargo
Bank</u>, No. 12-01037 CRB, 2012 WL 2061515, at *7 (N.D. Cal. June 7,
2012).  Plaintiff will be given leave to amend to add
cancellation to her prayer for relief.

F.  <u>Quiet Title</u>

The purpose of a quiet title action is to establish
one's title against adverse claims to real property.  A basic
requirement of an action to quiet title is an allegation that
plaintiffs "are the rightful owners of the property, i.e., that
they have satisfied their obligations under the Deed of Trust."
<u>Kelley v. Mortg. Elec. Registration Sys.</u>, 642 F. Supp. 2d 1048,
1057 (N.D. Cal. 2009).  California Code of Civil Procedure
section 761.020 states that a claim to quiet title requires: (1)
a verified complaint, (2) a description of the property, (3) the
title for which a determination is sought, (4) the adverse claims

to the title against which a determination is sought, (5) the
date as of which the determination is sought, and (6) a prayer
for the determination of the title.  Cal. Civ. Proc. Code §
761.020.

"A quiet title action is doomed in the absence of
tender of the full amount owed." Gjurovich v. California, No.
1:10-CV-01871-LJO, 2010 WL 4321604, at *7 (E.D. Cal. Oct. 26,
2010).  "Unless the mortgagor discharges the debt, the cloud on
his or her title cannot be removed." Aquilar v. Bocci, 39 Cal.
App. 3d 475, 477 (1st Dist. 1974).  A mortgagor, therefore,
cannot quiet his title against the mortgagee without paying the
debt secured.  Singh, 2012 WL 691705, at *9 (citing Shimpones v.
Stickney, 219 Cal. 637, 649 (1934)).

While the FAC includes an offer to tender the amount
due on her loan, plaintiff does not allege that she has tendered
or offer to tender the total debt secured, which appears to be
over $500,000.00.  (FAC ¶ 28.)  The court will therefore grant
defendant's motion to dismiss plaintiff's claim to quiet title.

G.   Declaratory Relief

In plaintiff's claim for declaratory relief, she
repeats her claims that the foreclosure was wrongful because
defendants violated HAMP and failed to suspend foreclosure
proceedings while reviewing plaintiff's modification application
and suggests that defendant will likely argue that they were
entitled to foreclose on her property and complied with statutory
procedures governing the foreclosure process.  (FAC ¶¶ 64-65.)
She then alleges that "an actual controversy exists as to whether
the above-mentioned contracts existed, and which party breached

21

1  them, if any, and whether Defendants were lawfully entitled to

2  effectuate said foreclosure" and requests a "judicial

3  determination of each parties' rights and duties pertaining to

4  the above-referenced contracts." (Id. ¶¶ 66, 68.)

5       The court is unable to determine what contracts

6  plaintiff refers to here.  Because it is not at all clear what

7  declaratory relief plaintiff is seeking, the court will grant

8  defendant's motion to dismiss this claim.

9       H.   Injunctive Relief

10      Plaintiff purports to state a cause of action for

11 injunctive relief.  Injunctive relief is not an independent cause

12 of action; rather, it is a remedy.  See McDowell v. Watson, 59

13 Cal. App. 4th 1155, 1159 (4th Dist. 1997) ("Injunctive relief is

14 a remedy and not, in itself a cause of action") (internal

15 quotation marks omitted).  The court will dismiss plaintiff's

16 fourth cause of action, but plaintiff may amend her FAC to a

17 include injunctive relief in her prayer.

18      IT IS THEREFORE ORDERED that Aurora's motion to dismiss

19 be, and the same hereby is, DENIED with respect to plaintiff's

20 claims for promissory estoppel and to set aside the trustee's

21 sale and GRANTED with respect to the remaining claims.

22      Plaintiff has twenty days from the date of this Order

23 to file an amended complaint, if she can do so consistent with

24 this Order.

25 DATED:  July 2, 2012

26

27 _____

   WILLIAM B. SHUBB

28 UNITED STATES DISTRICT JUDGE

22