HAROUNI LAW GROUP
KAIVAN HAROUNI [SBN 256582]
9025 Wilshire Blvd., 5th Floor
Beverly Hills, CA 90211
Telephone: 310-693-8333
Facsimile: 310-494-9499
Email: KH@harounilaw.com

Attorney for Plaintiff RHODA Y. SOLOMON

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RHODA Y. SOLOMON, an individual,<br><br>Plaintiff,<br>    vs.<br><br>AURORA LOAN SERVICES, LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: 2:12-cv-00209-WBS-KJN<br>(Judge William B. Shubb)<br><br>**PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: THE ISSUANCE OF A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RHODA SOLOMON IN SUPPORT THEREOF**<br><br>Date:    September 13, 2012<br>Time:   8:30 AM<br>Place:   Courtroom 5—14th Floor<br><br>Complaint Filed:   January 11, 2012<br>Trial Date:           None Set |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

**COMES NOW** Plaintiff Rhoda Solomon, on September 13, 2012 at 2:00 pm or as soon thereafter as the matter may be heard in Courtroom 5, on the fourteenth floor of the above-entitled courthouse, located at 501 I Street, Suite 4-200, Sacramento, CA 95814, Plaintiff Rhoda Solomon ("Solomon") will and hereby does move the court ex parte for a Temporary Restraining Order to

– 1 –
**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

prevent Defendants, their subsidiaries and agents from selling the subject property located at 1558 Tamarisk Lane, Tracy, CA 95377-8273 ("subject property") to a third party, or evicting Plaintiff from the premises, and for an order to show cause why a preliminary injunction should not issue pending trial in this action, enjoining Defendants and their subsidiaries from selling the subject property or evicting Plaintiff during the pendency of this action.

This application is made on the grounds that Plaintiff will suffer immediate and irreparable harm if Defendants are not enjoined from evicting Plaintiff and selling or otherwise conveying the subject property. This application is made based upon the memorandum of points and authorities, declarations attached thereto, and the verified complaint filed in this action.

DATED:  September 12, 2012                                                              **Harouni Law Group**

_____

KaivonHarouni
Attorney for Plaintiff
RHODA SOLOMON

**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

While Plaintiff was working with Defendant on HAMP modification, Defendant wrongfully and unlawfully foreclosed on the subject property. Defendant foreclosed on the subject property on August 11, 2011, despite the fact that Plaintiff was in active review for a loan modification that was requested June 29, 2011.

Defendant was rejected for a HAMP modification in bad faith on August 9, 2010, on the premise that she did not turn in the required documents to process her loan modification application. This was patently false as she had submitted a complete HAMP application to Defendant on *five prior occasions*.

Plaintiiff was induced to apply for another HAMP modification on August 16, 2010 when Defendant sent Plaintiff a letter promising to evaluate her loan for a HAMP modification if she submitted the HAMP application with supporting documentation to them, and was deemed eligible for a HAMP modification. However, Defendant rejected her HAMP modification again on November 29, 2010, on the premise that she did not qualify, when her finances showed clearly that she did qualify for a loan modification. Curiously, Defendant rejected the same application again no December 20, 2010, based on the pretense that Plaintiff's monthly housing to income and debt to income ratio was too high, though HAMP has no such guidelines by which to judge a HAMP application.

Plaintiff then tendered the entirety of her arrearages to Defendant on June 16, 2011 in order to bring her loan current and reinstate her loan pursuant to CCP 2924c. However, Defendant induced Plaintiff to wait until Defendant had an opportunity to respond to her latest HAMP application before reinstating her loan in the hopes that Plaintiff would obtain a principal reduction as a term of her HAMP modification. Defendant promised that, pursuant to HAMP guidelines, Plaintiff had nothing to lose because Defendant would not foreclose until and unless Plaintiff's HAMP application was denied. Despite this clear and unambiguous promise, Defendant foreclosed on Plaintiff's home on August 11, 2011 without having accepted or denied Plaintiff's application. Thereafter, on October 3, 2011, it filed an unlawful detainer case against Plaintiff to evict her and her family.

– 3 –
**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

As such, equity implores that the Court order that Defendant be enjoined from selling the subject property to a third party and that Defendant be enjoined from proceeding with any eviction action against Plaintiff to prevent Plaintiff from suffering immediate and irreparable harm.

## II. FACTUAL BACKGROUND

1. On or about June 15, 2007, Plaintiff took out a mortgage on the subject property from AMERICAN BROKER'S CONDUIT ("ABC") in the amount of $467,000.00. A true and correct copy of the relevant parts of the Deed of Trust ("DOT") (Instrument No. 2007120534, recorded on June 29, 2007) is attached hereto as **Exhibit A**.

2. On or about January, 2010, Plaintiff missed her first mortgage payment on the subject property due to temporary economic hardship.

3. On or about January, 2010, Plaintiff applied for a HAMP loan modification.

4. On or about February 18, 2010, Aurora, acting in its capacity as the servicer of ABC's loan, sent Plaintiff a letter acknowledging receipt of financial materials submitted for the purpose of obtaining a HAMP modification. The letter stated that Plaintiff's package was incomplete and requested Plaintiff's two most recent pay-check stubs. A true and correct copy of this letter is attached hereto as **Exhibit B.** Aurora's letter was inaccurate as Plaintiff had submitted all requested documents in a timely manner.

5. On or about March 16, 2010, Plaintiff hired Financial Hope For America ("FHFA"), a non-profit company, to assist her with obtaining a HAMP modification from Aurora. A true and correct copy of an email memorializing FHFA's representation of Plaintiff is attached hereto as **Exhibit C.**

6. On or about May 13, 2010, Aurora sent Plaintiff a letter acknowledging receipt of her HAMP loan modification application. A true and correct copy of this letter is attached as **Exhibit D.**

7. On or about May 13, 2010, Aurora sent Plaintiff a letter requesting additional materials in support of her HAMP loan modification application. Aurora requested Plaintiff's two most recent pay stubs, most recent tax returns, and a utility bill. A true and correct copy of this letter is attached hereto as **Exhibit E**. This request was redundant as Plaintiff had submitted a complete package on April 26, 2010, but Plaintiff complied nonetheless.

**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

8. On or about June 14, 2010, Aurora sent Plaintiff a letter acknowledging receipt of financial materials submitted for the purpose of obtaining a HAMP loan modification. The letter stated that Plaintiff's package was incomplete and requested Plaintiff's two most recent pay-check stubs, most recent tax returns, and a utility bill. A true and correct copy of this letter is attached hereto as **Exhibit F.** Aurora's letter was inaccurate as Plaintiff had already submitted all requested documents in a timely manner, but Plaintiff complied by submitting the requested documents nonetheless.

9. On or about July 7, 2010, Aurora sent Plaintiff a letter acknowledging receipt of financial materials submitted for the purpose of obtaining a Home Affordable Modification Program loan modification. The letter stated that Plaintiff's package was incomplete and requested Plaintiff's bank statements for prior three months showing rents being deposited. A true and correctcopy of this letter is attached hereto as **Exhibit G.** Aurora's letter was inaccurate as Plaintiff had already submitted all requested documents in a timely manner, but Plaintiff responded compliantly nonetheless.

10. On or about August 9, 2010, Aurora sent Plaintiff a letter denying her request for a HAMP loan modification. The letter stated that Plaintiff was rejected because she did not provide the requested documents within the specified time frame, though Plaintiff had submitted all the documents requested on *five prior occasions*. A true and correct copy of this letter is attached hereto as **Exhibit H.**

11. On or about August 16, 2010, Aurora sent Plaintiff a letter stating, "You may be eligible for the Home Affordable Modification Program (HAMP)[.]" "Here's how it works: we will first determine if you are eligible based on your situation. To conduct this evaluation, we need you to submit an Initial Package consisting of: [Request for Modification, Tax Returns, Evidence of Income, etc.]. If you are eligible [for a HAMP modification], we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment. At first, you will make new, affordable monthly payments on your mortgage loan during a trial period. If you make those payments successfully and fulfill all Trial Period Plan conditions, we will permanently modify your mortgage loan." A true and correct copy of this letter is attached hereto as **Exhibit I.**

– 5 –
**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

12. On or about August, 2010, Plaintiff reapplied for another HAMP modification in reliance on the August 16, 2010 letter.

13. On or about August 18, 2010, Aurora sent Plaintiff a letter acknowledging receipt of her HAMP application.  A true and correct copy of this letter is attached hereto as **Exhibit J.**

14. On or about November 29, 2010, Aurora sent Plaintiff a letter denying her request for a HAMP modification.  The letter stated that Plaintiff was rejected due to "excessive forbearance".  The letter went on to state, "we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program." A true and correct copy of this letter is attached hereto as **Exhibit K.**

15. Defendant's letter was incorrect.  Under HAMP, lenders and loan servicers must perform good faith reviews of HAMP applications and modify loans when, in addition to the qualifying requirements set forth in ¶ 38, it can be proven that the borrower's monthly mortgage payment, reduced to 31% of their gross monthly income, would pay off the entirety of their loan within 40 years at 2% interest.  Here, Plaintiff Solomon's gross monthly income when she applied for a HAMP modification was $6,000.00.  A reduction of her monthly mortgage payments to 31% of her gross monthly income would oblige her to pay $2,000.00 per month.  At $2,000.00 per month, Plaintiff would, in fact, have been able to pay off the entirety of her loan within 40 years at 2% interest.  In fact, she would have been qualified for a HAMP application even if her gross monthly income were as low as $5,771.60. A true and correct copy of a financial analysis worksheet demonstrating prospective workout terms for which Plaintiff is eligible is attached hereto as **Exhibit L.**

16. On or about December 20, 2010, Aurora sent Plaintiff a second letter denying the same request for a home foreclosure alternative that she made on August, 2010, but this one denied her for different reasons.  The letter stated that Plaintiff was rejected because "Your monthly housing to income ratio is too high to qualify.  Your monthly debt to income ratio is too high to qualify for our programs." A true and correct copy of this letter is attached hereto as **Exhibit M.**

17. Contrary to the assertions in Defendant's letter, HAMP requirements do not specific

**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

anywhere that a particular housing to income or debt to income ratio must be achieved for eligibility. Furthermore, as established, Plaintiff's loan was eligible under all sets of requirements. Therefore, Defendant's rejection letter is based on disingenuous and false pretense.

18. On or about December, 2010, Plaintiff reapplied for a HAMP modification.

19. On or about January 26, 2011, Aurora sent Plaintiff a letter acknowledging receipt of financial materials submitted for the purpose of obtaining a foreclosure alternative. The letter stated that Plaintiff's package was incomplete and requested an executed Dodd-Frank Certification form, IRS form 4506, Plaintiff's two most recent bank statements and Plaintiff's most recent tax-return. A true and correct copy of this letter is attached hereto as **Exhibit N.** Aurora's letter was inaccurate as Plaintiff had already submitted all requested documents in a timely manner.

20. On or about February 22, 2011,ABC assigned the Deed of Trust on the subject property to Aurora Loan Services LLC ("Aurora"). A true and correct copy of the Corporate Assignment of Deed of Trust (Instrument No. 2011025236, recorded on March, 1, 2011) is attached hereto as **Exhibit O.**

21. On or about March 2, 2011, Aurora filed a Substitution of Trustee naming Quality Loan Service Corporation as trustee under the Deed of Trust.A true and correct copy of the Substitution of Trustee (Instrument No. 2011027673, recorded on March 7, 2011) is attached hereto as **Exhibit P.**

22. On or about March 8, 2011, Quality Loan Service Corp. recorded a Notice of Default and Election to Sell Under Deed of Trust. The Notice of Default listed a past-due balance of $20,802.84. A true and correct copy of the Notice of Default (Instrument No. 2011028066) is attached as **Exhibit Q.**

23. On or about June 10, 2011, Quality Loan Service Corp. recorded a Notice of Trustee Sale on the subject property which identified the total outstanding balance on the subject loan to be $567,089.94. A true and correct copy of the Notice of Trustee Sale (Instrument No. 2011070003) is attached as **Exhibit R.**

24. On June 15, 2011, Plaintiff called Aurora and spoke with Rebecca. Plaintiff told Rebecca

that she had applied on two different occasions and each time was told she was ineligible for a HAMP application, when it was clear that she was, in fact, eligible. Rebecca replied that Plaintiff had two options: 1) pay Aurora the entirety of her arrearages; or 2) obtain a loan workout under HAMP. Plaintiff told Rebecca that her brother and mother were living with her and contributed to the mortgage payments. She also told Rebecca that the temporary hardship which originally led her to default, her job loss, was no longer a factor as she was re-employed. Rebecca asked Plaintiff if she was willing and able to pay back the arrearages to reinstate her loan, and Plaintiff said that she had to discuss it with her brother and mother. Later on that day, Plaintiff, her brother, and mother reviewed their finances and came to the conclusion that they had sufficient funds to pay back the arrearages.

25. On June 16, 2011, Plaintiff called Aurora back and spoke with Maytal. Plaintiff asked to speak with Rebecca but Maytal stated that she could not transfer the call to any other agent but a supervisor. Plaintiff told Maytal that a Notice of Sale was recently posted on her door, and that she wanted to reinstate her loan so as to avoid foreclosure. Plaintiff offered to pay Aurora the arrearages in its entirety, but stated that she was hoping that Aurora would reduce the total principal balance, as the economic downturn had reduced her home's value to half of what she owed on the note. Maytal reviewed the notes in the system regarding Plaintiff's loan and saw that a HAMP application was currently pending. Maytal told Plaintiff that she could reinstate her loan by paying the arrearages, but that the only way to obtain a reduction of the principal balance would be to obtain a loan workout. Maytal told Plaintiff to wait until after she gets the results of her HAMP application before paying back the arrearages, in hopes that Aurora might reduce her principal. Maytal also informed Plaintiff that Aurora filed the Notice of Sale as a matter of course, but that Aurora could not foreclose on her property until and unless they reject her application. Plaintiff relied on Maytal's representations in not paying back the arrearages until after Defendant's determination of her HAMP application.

26. On or about June 29, 2011, Plaintiff sent Aurora a letter explaining her financial condition and requested a loan modification with an affordable monthly payment. At this time Plaintiff also submitted a HAMP loan modification. A true and correct copy of Plaintiff's HAMP

– 8 –
**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

loan modification and hardship letter is attached as **Exhibit S.**

27. On or about August 11, 2011, while Plaintiff's HAMP request was still pending, Aurora foreclosed on the subject property. Because there were no other sufficient bidders, Aurora took back the property as a REO, "purchasing" the subject property for $215,100.00, which is about one-third of the $588,010.08 due at sale. A true and correct copy of the Trustee's Deed Upon Sale (Instrument No. 2011095994; recorded on August 11, 2011) is attached hereto as **Exhibit T.**

28. On or about October 3, 2011, Aurora filed an Unlawful Detainer suit against Plaintiff. A true and correct copy of the complaint is attached as **Exhibit U.**

## QUALIFICATION FOR LOAN MODIFICATION UNDER H.A.M.P.

The Home Affordable Modification Program ("HAMP") is part of the Making Home Affordable Program which was created by the Financial Stability Act of 2009. HAMP was developed as a collaboration with banks, services, credit unions, the FHA, the VA, the USDA and the Federal Housing Finance Agency, to create standard loan modification guidelines for lenders to take into consideration when evaluating a borrower for a potential loan modification.

The criteria by which a borrower can qualify for HAMP ("HAMP criteria") are the following: 1) the borrower's loan must have originated on or before January 1, 2009; 2) there must be a first-lien loan on an owner-occupied property with unpaid principal balance up to $729,750 ) ; 3) the current principal, interest, property taxes and homeowner's insurance payments are costing the borrower over 31% of his or her gross monthly household income; and 4) the borrower must be facing a financial hardship.

If a borrower meets the HAMP criteria, HAMP clearly requires "any foreclosure action be temporarily suspended during the trial period, or while the borrowers are considered for alternative foreclosure prevention options." Home Affordable Modification Program Guidelines, March 4, 2009, https://www.treas. Gov/press/releases/reports/9odification –program_guidelines. Pdf (last visited December 07, 2009)

Plaintiff met the HAMP criteria and was entitled to a good faith review of her loan modification application because: 1) Plaintiff obtained her loan on or about June 12, 2007; 2) Plaintiff's loan had an unpaid principal balance of $588,010.08 at the time of foreclosure, and was a

first-lien loan on property which she occupied; 3) Plaintiff owed $1,720.29 in monthly principal, $54.00 for insurance, and $316.00 in property taxes for a total of $2,090.29 which equaled over 31% of her grossly monthly income (66% to be exact) of her gross monthly household income of $3121.00 in June, 2011, when Plaintiff last submitted a formal request for a HAMP loan modification; and 4) Plaintiff was facing financial hardship as a result of job loss, disability, and caring for a sick parent. Because Aurora did not modify Plaintiff's loan under HAMP guidelines, Plaintiff lost her home to foreclosure, which is what HAMP was intended to prevent.

## III. A TRO AND PRELIMINARY INJUNCTION SHOULD BE GRANTED BECAUSE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF THE COMPLAINT.

The Ninth Circuit has prescribed the following equitable criteria for determining whether to grant injunctive relief:

> (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; and, (3) the extent to which the balance of hardships favors the respective parties. The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits.... [T]he required degree of irreparable harm increases as the probability of success decreases.

Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., 367 F.3d 1108, 1111 (9th Cir.2004) (quoting Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir.1994)). The standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction. Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F.Supp. 1309, 1313 (E.D.Cal.1996); Franklin v. Scribner, Civil No. 07-0438 BTM (LSP), 2007 WL 1491100, at *3 (S.D.Cal. May 21, 2007). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); accord L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir.1980); Del Toro-

Chacon v. Chertoff, 431 F.Supp.2d 1135, 1139-40 (W.D.Wash.2006).  Lastly, "the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."  See Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir.1988)

Plaintiff will be irreparably harmed if Defendant is not enjoined from selling the subject property to a third party, or if Plaintiff is evicted, because "the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."  See Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir.1988).

In any case, Plaintiff's hardship in losing ownership of and residence in her home for the past four years supersedes Defendants hardship in not being able to evict Plaintiff and sell the subject property.  Defendant and other major banks are currently sitting on a stockpile of houses that they "purchased" from their own foreclosure sales as real-estate-owned ("REO") and cannot sell because of depressed market prices.  Defendant would most likely allow the subject property to stay vacant for months, if not years, until market conditions improve, while Plaintiff would continue to make a home out of the subject property.

## A. PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS OF HER COMPLAINT BECAUSE DEFENDANT FAILED TO HONOR ITS PROMISES TO PLAINTIFF.

Promissory estoppel applies when a promise is made "which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance… if injustice can be avoided only by enforcement of the promise."*Kajima/Ray Wilson v Los Angeles County Metro.Transp. Auth.* (2000) 23 C4th 305, 310, 96 CR2d 747.The elements of promissory estoppel are [US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 28 Cal. Rptr. 3d 894 (4th Dist. 2005); Toscano v. Greene Music, 124 Cal. App. 4th 685, 21 Cal. Rptr. 3d 732, 22 I.E.R. Cas. (BNA) 21 (4th Dist. 2004)]:

- (1) a clear and unambiguous promise;
- (2) reasonable and foreseeable reliance by the party to whom the promise was made; and
- (3) substantial detriment or injury, caused by the reliance, to the party asserting estoppel.

Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation

**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

arising out of such statement or conduct, permitted to contradict it.  West's Ann.Cal.Evid.Code § 623.

**1.  Defendant's Representative Promised Plaintiff that Her Modification Application Would Receive a Response Before Foreclosure.**

On June 15, 2011, Plaintiff called Aurora and spoke with Rebecca.  Plaintiff told Rebecca that she had applied on two different occasions and each time was told she was ineligible for a HAMP application, when it was clear that she was, in fact, eligible.  Rebecca replied that Plaintiff had two options: 1) pay Aurora the entirety of her arrearages; or 2) obtain a loan workout under HAMP.  Plaintiff told Rebecca that her brother and mother were living with her and contributed to the mortgage payments.  She also told Rebecca that the temporary hardship which originally led her to default, her job loss, was no longer a factor as she was re-employed.  Rebecca asked Plaintiff if she was willing and able to pay back the arrearages to reinstate her loan, and Plaintiff said that she had to discuss it with her brother and mother.  Later on that day, Plaintiff, her brother, and mother reviewed their finances and came to the conclusion that they had sufficient funds to pay back the arrearages.

On June 16, 2011, Plaintiff called Aurora back and spoke with Maytal.  Plaintiff asked to speak with Rebecca but Maytal stated that she could not transfer the call to any other agent but a supervisor.  Plaintiff told Maytal that a Notice of Sale was recently posted on her door, and that she wanted to reinstate her loan so as to avoid foreclosure.  Plaintiff told Maytal that she was presently willing and able to pay off her arrearages, but that she was hoping that Aurora would reduce the total principal balance, as the economic downturn had reduced her home's value to half of what she owed Aurora.  Maytal reviewed the notes in the system regarding Plaintiff's loan and saw that a HAMP application was currently pending.  Maytal told Plaintiff that she could reinstate her loan by paying the arrearages, but that the only way to obtain a reduction of the principal balance would be to obtain a loan workout.  Maytal told Plaintiff to wait until after she gets the results of her HAMP application before paying back the arrearages, in hopes that Aurora might reduce her principal.  Maytal also informed Plaintiff that Aurora filed the Notice of Sale as a matter of course, but that Aurora could not foreclose on her property until and unless they reject her application.  Plaintiff relied on Maytal's representations in not paying back the arrearages until after Defendant's determination of her HAMP

– 12 –
**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

application.

Defendant, through Maytal, made a clear and ambiguous promise on June 16, 2011 that Aurora would not foreclose on her home until and unless they reject her application.

It was reasonable and foreseeable that Plaintiff would rely on Maytal's promise because Aurora hired and trained Maytal to work in its loss mitigation department, entrusted her to answer incoming calls from distressed borrowers such as Plaintiff, and authorized her to give information regarding HAMP applications to borrowers such as Plaintiff.

Plaintiff suffered substantial injury via loss of her home to foreclosure due to reliance on Maytal's promise. Plaintiff only refrained from submitting the entire amount necessary to reinstate her loan based on Maytal's representation that she only had a chance of getting a principal reduction via HAMP modification, and that she should wait until and unless her HAMP application is rejected before reinstating her loan as Defendant would not foreclose until that date in any case.
As a result, Defendant is estopped from foreclosing on Plaintiff's property without first having rejected Plaintiff's December, 2010 HAMP application, and is now estopped from pursuing an unlawful detainer action against Plaintiff.

### IV. <u>NO BOND SHOULD BE REQUIRED</u>

There is no need for the court to impose a bond in this matter in regards to the TRO. If it is ultimately determined that Plaintiff is not entitled to a preliminary injunction in this matter, Defendant is protected by the security interest it holds in the subject property. A bond would be redundant and would only provide additional hardship and burden on plaintiff.

### V. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that this Court issue a temporary restraining order and preliminary injunction to restrain and enjoin defendants and their agents from evicting Plaintiff and/or selling the subject property to a third party. By doing so, the Court will save Plaintiff from suffering immediate and irreparable harm.

//

//

**PLAINTIFF'S MOTION FOR A TRO AND AN OSC RE: PRELIMINARY INJUNCTION**

DATED:  September 12, 2012                                    **Harouni Law Group**

                                                                          _____
                                                                          KaivonHarouni
                                                                          Attorney for Plaintiff
                                                                          RHODA SOLOMON