UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RHODA Y. SOLOMON, an individual | Civ. No. 2:12-00209 WBS KJN |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |
| AURORA LOAN SERVICES, LLC, a California limited liability company; and DOES 1 through 50, inclusive, | |
| Defendant. | |

----oo0oo----

Plaintiff Rhoda Y. Solomon initiated this action against defendant Aurora Loan Services, LLC, in connection with the foreclosure and sale of plaintiff's residence. Plaintiff now requests a preliminary injunction barring defendant from selling the residence to a third party and pursuing an unlawful detainer action against her in state court.

1

I. <u>Relevant Facts and Procedural History</u>

  Plaintiff held a mortgage with defendant,[1] but fell behind in payments beginning January 1, 2010.  Plaintiff sent a letter to defendant explaining that she was suffering hardship due to loss of a job, and filed ff filed for three Home Affordable Modification Program ("HAMP") loan modifications.  Two applications were denied, but the third application was neither granted nor denied.  (Second Am. Compl. ("SAC") ¶¶ 8-24 (Docket No. 25).)  Defendant filed a Substitution of Trustee naming Quality Loan Service Corporation ("Quality") as trustee under the Deed of Trust.  (<u>Id.</u> ¶ 25, Ex. O.)  Quality recorded a Notice of Default listing a past-due balance of $20,802.84.  (<u>Id.</u> ¶ 27, Ex. Q.)  Quality then recorded a Notice of Trustee's Sale on June 10, 2011 that indicated a sale would be held on July 5, 2011.  (<u>Id.</u> ¶ 28, Ex. R.)

  Plaintiff alleges that she contacted defendant on June 15, 2011, just days after the Notice of Trustee's Sale, and spoke with "Rebecca."  (<u>Id.</u> ¶ 29.)  Plaintiff explained to Rebecca that plaintiff was wrongly denied her HAMP modifications and that she had recently become re-employed.  (<u>Id.</u>)  Rebecca replied that plaintiff had two options: 1) pay Aurora the entirety of her arrearage, or 2) obtain a loan workout under HAMP.  (<u>Id.</u>)  Plaintiff discussed the situation with her mother and brother, who were living with her at the time, and they decided that

---

[1] Solomon first obtained a mortgage through American Broker's Conduit, which transferred the deed of trust to Aurora on February 22, 2011. (SAC ¶ 25, Ex. O.)  A more complete factual account of the case is available in the court's prior order addresing defendant's motion to dismiss.  (<u>See</u> Order Re: Def.'s Mot. to Dismiss FAC (Docket No. 23).)

2

together they could pay back the arrearage.  (Id.)

Calling back the next day, plaintiff alleges to have spoken with "Maytal."  (Id.)  Plaintiff asked to be transferred to Rebecca but Maytal informed plaintiff that she could only transfer calls to supervisors.  (Id.)  According to plaintiff, she explained to Maytal that she wanted to reinstate her loan so as to avoid foreclosure and that she was hoping defendant would reduce the principal balance on her home through a HAMP modification.  (Id.)  Maytal responded that plaintiff could reinstate her loan by paying the amount past due, but that the only way to reduce the principal would be to obtain a HAMP modification.  (Id.)  Plaintiff allegedly offered to pay the arrearage, as she had sufficient funds at the time to cover the accrued balance.  (Id.)  Maytal told her to wait until defendant informed her of the results of her HAMP application.  (Id.)  Maytal allegedly informed plaintiff that defendant filed a Notice of Sale "as a matter of course, but that [defendant] could not foreclose on plaintiff's property until and unless [defendant] reject[s] her application."  (Id.)

Approximately two weeks later, on June 29, 2011, plaintiff claims to have sent defendant a letter in which she explained that she was experiencing financial hardship due, in part, to the loss of her job and disability.  (Id. ¶ 31, Ex. S.)  The letter requested a loan modification.  (Id.)  Plaintiff also submitted a fourth HAMP modification application.  (Id.)

On August 11, 2011, defendant foreclosed on the residence, which was sold to defendant for $215,100.  (Id. ¶ 32, Ex. T.)  On or about October 3, 2011, defendant filed an ulawful

3

detainer action against plaintiff in state court.  (Id. ¶ 33, Ex. U.)  The state court issued a temporary restraining order preventing defendant from selling the property for twenty-two days and set a preliminary injunction hearing for January 27, 2012.  (*Ex Parte* Appl. for TRO Ex. A (Docket No. 32).)  Two days before the preliminary injunction hearing, defendant removed the case to federal court.  (Notice of Removal Ex. 1 (Docket No. 1).)

After removal, the court granted defendant's motion to dismiss plaintiff's Complaint and plaintiff subsequently filed a First Amended Complaint alleging nine claims against defendant.  The court granted defendant's second motion to dismiss on all claims except plaintiff's claims for (1) promissory estoppel and (2) to set aside the trustee's deed upon sale.  (Order Re: Def.'s Mot. to Dismiss Pl.'s First Am. Compl. (Docket No. 23).)

Eight months after the case was removed to federal court, plaintiff requested an *ex parte* temporary restraining order ("TRO") one day before the unlawful detainer trial was set to commence in state court.  She requested that the court prohibit sale of the property and enjoin the state court from proceeding with the unlawful detainer action.  (*Ex Parte* Appl.)  The court denied plaintiff's request for a TRO in its entirety.  The court granted and scheduled a hearing on plaintiff's motion for a preliminary injunction. (Order Denying TRO (Docket No. 35).)

In state court, the unlawful detainer trial was continued until October 19, 2012.  (Pl.'s Reply 3:4-5.)  After submitting the request for a TRO, plaintiff allegedly filed for bankruptcy, though the details of that bankruptcy action have not

4

been submitted to the court.[2]

II. <u>Abstention from Enjoining the Unlawful Detainer Action</u>

With respect to plaintiff's request that the court restrain defendant from proceeding with the unlawful detainer trial, <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and the Anti-Injunction Act, 28 U.S.C. § 2283, counsel against such an injunction. "In <u>Younger</u>, the Supreme Court espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings." <u>Columbia Basin Apartment Ass'n v. City of Pasco</u>, 268 F.3d 791, 800 (9th Cir. 2001) (alteration in original) (internal quotation marks omitted). <u>Younger</u> abstention has been extended to civil cases and, "[a]bsent extraordinary circumstances, []abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." <u>Id.</u> "A number of courts have found <u>Younger</u> abstention appropriate when asked to restrain state unlawful detainer proceedings." <u>Wadhwa v. Aurora Loan Servs., LLC</u>, Civ. No. 2:11-1784 KJM KJN, 2011 WL 2681483, at *3 (E.D. Cal. July 8, 2011) (citing cases).

Plaintiff argues that <u>Younger</u> abstention is inappropriate here because plaintiff does not have an adequate

---

[2] The automatic stay provision of Bankruptcy Code § 362(a) affects actions against the debtor. 11 U.S.C. § 362. Here, however, the case is brought by the debtor, therefore the automatic stay provision does not apply. <u>See</u> <u>In re Palmdale Property, LLC</u>, 654 F.3d 868, 875 (9th Cir. 2011) ("The stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor.").

5

opportunity to litigate promissory estoppel as an affirmative defense in the unlawful detainer trial.  Plaintiff does not provide, nor can this court find, a case in which a federal court enjoined a state court unlawful detainer proceeding under the adequacy prong of Younger.

In addition to Younger abstention, the Anti-Injunction Act "forbids a federal court from enjoining or staying state court proceedings 'except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'"  Diaz v. Nat'l City Bank, Civ. No. 2:12-1393 MMA NLS, 2012 WL 2129916, at *2 (S.D. Cal. June 12, 2012) (quoting 28 U.S.C. § 2283).  "The exceptions to the Anti-Injunction Act are narrowly construed and 'doubts as to the propriety of a federal injunction against a state court proceeding should be resolved in favor of permitting the state action to proceed.'"  Id. (quoting Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)).  The request to enjoin a state court unlawful detainer action does not fit into any of the Act's exceptions.  Id.

The court is not persuaded that this case qualifies as one of those "extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury."  Krahm v. Graham, 461 F.2d 703, 709 (9th Cir. 1972).  Plaintiff does not cite any authority holding that an unlawful detainer action rises to the level of an "extraordinary case" like the criminal prosecution for obscenity at issue in Krahm.  Thus the court will deny plaintiff's request to enjoin the unlawful detainer action currently pending in

6

California state court.

III. <u>Preliminary Injunction of Foreclosure Sale</u>

To succeed in a request for a preliminary injunction, a plaintiff must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Perfect 10, Inc. v. Google, Inc.</u>, 653 F.3d 976, 979 (9th Cir. 2011). In the Ninth Circuit, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).

   A. <u>Likelihood of Success on the Merits</u>

Plaintiff's remaining two causes of action after the order to dismiss are (1) promissory estoppel; and (2) equitable cause of action to set aside and cancel the sale.

      1. <u>Promissory Estoppel</u>

"Promissory estoppel requires the plaintiff to show (1) the existence of a promise 'clear and unambiguous in its terms'; (2) 'reliance by the party to whom the promise is made'; (3) that any reliance was both 'reasonable and foreseeable'; and (4) that the party asserting the estoppel was injured by his reliance." <u>US Ecology, Inc. v. State</u>, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (quoting <u>Laks v. Coast Fed. Sav. & Loan Ass'n</u>, 60 Cal. App.

7

3d 885, 890 (2d Dist. 1976)).

Plaintiff is permitted to submit documents and evidence in support of her motion, and the court may look to the adequacy of that evidence in determining whether success on the merits is likely. See, e.g., Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1127-40 (C.D. Cal. 2009) (evaluating the evidence plaintiff submitted in support of its request for a preliminary inunction, which included copyright registration certificates or lack thereof, and determining that the evidence did not establish likelihood of success on the merits); Mesde v. Am. Brokers Conduit, Civ. No. 2:09-02418 JF RS, 2009 WL 1883706, at *3 (N.D. Cal. June 30, 2009) (evaluating evidence submitted by plaintiffs in support of their preliminary injunction, including a review and audit of their loan transaction, and finding that the lack of calculations or identity of the auditor prevented the audit from being "credible evidence" showing a likelihood of success); Villanueva v. Sisto, Civ. No. 2:06-02706 LKK EFB, 2008 WL 2783169, at *3 (E.D. Cal. July 16, 2008) (evaluating the evidence plaintiff submitted in support of his request for a preliminary injunction, which included administrative grievances and requests for medical attention, and determining that the evidence was insufficient to support a claim of deliberate indifference).

In plaintiff's request for a preliminary injunction, she restates the allegations from her Second Amended Complaint without attaching any further evidence of her financial situation. Plaintiff alleges that defendant's employee told her not to pay arrearage until the HAMP application was approved or denied.

8

Plaintiff has not demonstrated a likelihood of convincing the court as the trier of fact that Maytal's statements caused her injury.  See US Ecology, 129 Cal. App. 4th at 904 ("Because promissory estoppel is viewed as an 'informal contract,' causation must be required as an element that a plaintiff must prove . . . .").  Even assuming plaintiff could succeed in persuading the court that Maytal told her to hold off payment until the modification was denied, plaintiff provides no evidence that she could or would have paid the arrearage had Maytal not instructed her otherwise.  Plaintiff does not provide evidence of sufficient funds to cover the arrearage, nor does plaintiff provide affidavits from her mother or brother to support the assertion that they were willing to help her pay the arrearage.  Besides plaintiff's conclusory allegations, there is no evidence that defendant's statements caused the injury to plaintiff.

To the contrary, plaintiff's allegations that she could have paid arrearage and started to make regular payments on a loan appear to be contradicted by plaintiff's own documents.  Plaintiff told Aurora representatives over the phone that she recently started a job and was able to make payments.  (SAC ¶ 29.)  After explaining over the phone that she was now employed, she sent a letter to defendant explaining that she was experiencing financial difficulty due to, in part, loss of a job.  (Id. ¶ 31, Ex. S.)  Evidence in plaintiff's own Complaint thus suggests that she could not afford the payments.  Plaintiff explains in her reply brief that the second letter was "initially dated December 20, 2010, and was resubmitted with her June 2011

9

Request for Modification" in an attempt to explain her past deficiencies. (Pl.'s Reply at 5:12-16.) While the court gives weight to plaintiff's assertion that she started a new job, the totality of the evidence in the record makes it difficult for the court to conclude that she is likely to succeed on the merits of her claim.

In addition to difficulty proving injury causation, plaintiff also will have difficulty proving that her alleged reliance on Maytal's statements was reasonable. It is doubtful plaintiff will be able to convince the court that it was reasonable for her to disregard a formal, written notice of sale, thereby jeopardizing a valuable asset, based on a telephonic oral representation by a barely-identifiable, perhaps-untraceable customer service representative. While it may be *possible* for plaintiff to convince the court that here alleged reliance was reasonable, without more than plaintiff's conclusory allegations, the court cannot say plaintiff is *likely* to succeed on the merits of her promissory estoppel claim.

## 2. Set Aside and Cancel the Sale

The elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale was prejudiced or harmed; and (3) the mortgagor tendered the amount of the secured indebtedness or was excused from tendering. Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (6th Dist. 2011). "It is the general rule that courts have power to vacate a foreclosure sale

10

where the sale has been improperly, unfairly, or unlawfully conducted, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." Id. at 104.

A trustee sale "can be successfully attacked . . . only if the buyer is not a bona fide purchaser." 6 Angels, Inc. v. Stuart-Wright Mortg., Inc., 85 Cal. App. 4th 1279, 1286 (2d Dist. 2001). "The proper standard to determine whether a buyer at a foreclosure sale is a BFP is whether the buyer (1) purchased the property for value, and (2) had no knowledge or notice of the asserted rights of another." Singh v. Wells Fargo Bank, Civ. No. 1:10-1659 AWI SMS, 2012 WL 691705, at *8 (E.D. Cal. Mar. 2, 2012) (quoting Melendrez v. D & I Inv., Inc., 127 Cal. App. 4th 1238, 1253 (6th Dist. 2005)). Here, defendant purchased the property for value, but it is not a bona fide purchaser because it was aware of plaintiff's claims to the property.

If Maytal's alleged statements are proven, the court could vacate the foreclosure to avoid inequity. In the motion for preliminary injunction, however, plaintiff makes no attempt to show that plaintiff had the funds to tender the arrearage, either through her own assets or through borrowing of assets. See In re Worcester, 811 F.2d 1224, 1230-31 (9th Cir. 1987) (noting that tender to overturn a foreclosure sale can be satisfied through a showing of convertible assets or ability to borrow). Though plaintiff claims to currently be "ready willing and able to tender all amounts that the court finds due and owing," (SAC ¶ 71), no bank statements, affidavits, or other proof of financial position accompany the request for a

11

preliminary injunction.  Plaintiff again relies on conclusory allegations that she could have tendered payment at the time of her conversation with Maytal.  Evidence, including plaintiff's letter to defendant, suggests that plaintiff could not tender the arrearage.  Conclusory allegations are simply not enough to find that plaintiff is likely to succeed on the merits of her cause of action to set aside the sale.  Plaintiff therefore cannot show likelihood of success on either of her causes of action.

       B.   <u>Likelihood of Suffering Irreparable Harm in the Absence of Preliminary Relief</u>

"The loss of one's personal residence is an irreparable harm."  <u>Dumas v. First N. Bank</u>, Civ. No. S-10-1523 LKK DAD, 2011 WL 567358, at *2 (E.D. Cal. Feb. 15, 2011); <u>see also</u> <u>Alcaraz v. Wachovia Mortg. FSB</u>, 592 F. Supp. 2d 1296, 1301 (E.D. Cal. 2009) ("[L]oss of a home is a serious injury.") ( O'Neill, J.).  Here, defendant purchased the property in a foreclosure sale and brought an unlawful detainer action against plaintiff in state court to evict her from the property.  If defendant is permitted to sell the home to a third party, that third party could be a bona fide purchaser and plaintiff could be barred from recovering the real property in this action.  Thus plaintiff would be likely to suffer irreparable harm in the absence of relief.

       C.   <u>Balance of Equities</u>

Plaintiff argues that the balance of equities tips in her favor due to the "extensive efforts" she undertook to avoid foreclosure and because she was denied the opportunity to pay the arrearage due to the misleading statements of the bank.  (Pl.'s Reply at 6:22-7:1.)  Again, plaintiff fails to provide evidence

that the arrearage would have been paid if Maytal had not allegedly misled plaintiff.  Plaintiff failed to make payments for thirty-three months and has continued to live in the house during that time.  (Def.'s Opp'n to Prel. Inj. at 8.)  Defendant would be harmed if it could not sell the home to cover the substantial losses arising from plaintiff's default.  When a borrower lives in a house for an extended period of time without making payments and uses the judicial process to delay the bank's recovery, the balance of equities tips in favor of the bank.  See Alcaraz, 592 F. Supp. 2d at 1306-07.  Here, the balance of equities similarly tips in defendant's favor.

### D. Public Interest

The public interest "weighs in favor of preventing the wrongful foreclosure of individuals' property."  Naderski v. Wells Fargo Bank, Civ. No. 11-1783 CAS CWX, 2011 WL 1627161, at *2 (C.D. Cal. Apr. 25, 2011).  The public also has an interest in relying upon the statements of mortgagees.  However, when a foreclosure has already been completed and there is no evidence that plaintiff would have been able to repay the arrearage, granting preliminary relief "would be a disservice to public interest by allowing [a party] to remain on the property after foreclosure sale and without their tender of outstanding amounts owed."  Cantu v. CitiMortgage, Inc., Civ. No. 10-2334 LJO GSA, 2010 WL 5394777 (E.D. Cal. Dec. 21, 2010).  Public interest does not, therefore, weigh in favor of plaintiff.

Defendant's argument that "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a

13

neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction" (<u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1139 (9th Cir. 2009)) does not apply here since the proposed injunction would restrict defendant's ability to sell to non-parties.

Defendant also argues that the current action is moot because the bankruptcy proceedings have granted plaintiff the relief she requests from the court. (Def.'s Opp. at 6:6-8.) Should the bankruptcy proceeding come to a quick resolution, however, the unlawful detainer trial and sale of the property could still occur during the proceedings in this case. Thus, the case is not moot.

Accordingly, because plaintiff cannot show a likelihood of success on the merits, balance of equities in her favor, or that the preliminary injunction is in the public interest, the court will deny plaintiff's motion for a preliminary injunction.

IT IS THEREFORE ORDERED, that plaintiff's motion for a preliminary injunction against defendant be, and the same hereby is, DENIED.

DATED: October 3, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE